This is case number 416-0005, and it is entitled The People of the State of Illinois v. Gavin Masters. For the appellant, we have Mr. Lovelace, and for the affilee, we have Ms. Nagler. Are you ready to proceed, counsel? I am, Your Honor. Thank you. Counsel, proceed. I brought the wrong file out, so we'll bring it out. Well, just hold on a second, please. Thank you. Thank you, and excuse me. Okay, good afternoon, Your Honors. Counsel, may it please the Court, I stand before you today on behalf of my client, 21-year-old Gavin Masters, who was convicted of murder and attempted murder in an Adams County courtroom and was sentenced to 115 years in prison. This conviction was not based upon any physical evidence, forensics, fingerprints, gunshot residue, nor any credible eyewitness testimony. Gavin was convicted because the trial court allowed the State to introduce other crime evidence that Gavin attempted and failed to steal a gun from a package while working at UPS 11 days prior to the shooting. Gavin was convicted by this other crime's evidence that an Adams County jury should not have heard. This other crime's evidence was first introduced to the trial in a September 2015 hearing a couple of months prior to the trial in a motion to admit. However, at the time, the State did not have a witness to testify to this other crime's evidence. The State, in presenting its motion, asked the court to assume that it would be able to locate a witness who would testify consistent with the police report, a report that said that Gavin had attempted to take a handgun out of a package at UPS but failed and he was subsequently fired. The State, in its written motion, argued that the other crime evidence was admissible for the issues of identification, intent, and motive, recognized exceptions to the rule allowing other crime's evidence to be heard. The Fifth District in People v. Lindley, a 2004 case cited in Appellant's brief at page 40, recognized the State's motivation for introducing such evidence and the peril it creates for defendants like Gavin. Everyone understands the persuasive potential that proof of other criminality packs, the court says, but those charged with the task of proving people guilty beyond a reasonable doubt understand it the best. The court goes on to say that, make no mistake about it, any prosecutor worth his salt will try very hard to persuade a judge that reason other than proof of criminal propensity exists in order to introduce evidence of extraneous criminality. The prosecutor in Adams County, being worth his salt, argued his motion and tried to persuade a judge that the failed attempt to steal a handgun could be offered to prove identity. He appeared to abandon his intent and motive arguments which were included in his written motion. And of course the court ended up admitting it for purposes of intent, right? That is correct, Your Honor. And they did have that at least in their motion? Yes, Your Honor. They did. And so since we know that it can be admitted for any reason other than propensity, where does the problem come in with admitting it for purposes of intent? Sure. Thank you, Your Honor. The issue with intent, Your Honor, is that the uncharged crime, the allegation that Gavin Master attempted but failed to steal a gun 11 days prior, has no connection or link to intent. And I go through the cases in Appellant's brief that talk about intent and those situations where those uncharged crimes are used to prove intent. And sometimes it's referred to, Your Honor, as intent and motive. I think sometimes they combine those in those opinions. And I know as I go a little bit further here in my oral arguments, I'll discuss those cases and how intent applies. My point of bringing up the abandoning of the argument is not to say that anyone was necessarily wrong for abandoning it, but more to point out, as I'll explain, the trial court's ruling. So the trial court, although intent was listed in the written motion, the trial court grabbed hold of intent, even though the prosecutor was arguing identification. And I believe identification was at issue in this case, and I'll go on to explain that. I don't believe that intent was at issue in this case. So is your position that the trial court can only consider the basis that something is being offered for in determining whether or not it will be admissible? No, I'm not saying that it can only do that, but clearly it has to perform some sort of analysis and apply the law in determining whether or not, one, the evidence. What is at issue in the case? What is the evidence of the uncharged crime that is going to be introduced? And then what is the connection between the two? And the court did not do that. The trial court did not do that in this case. The court stated that Masters had been charged with a specific intent crime, intent to kill. The court said, I think trying to acquire a gun goes directly to whether or not there's intent for him to kill. And so I believe the evidence is relevant, and the evidence should be allowed as to that specific situation. The court went on to say, and so what the court has to do with this, we're going to have to wait and see if, in fact, he, the witness, gets served. And then we're going to have to have a hearing in the middle of the trial. And before the trial as to whether or as to what the witness is actually going to say. So the court, at that point, making its ruling on this motion to admit, hadn't even heard any of the evidence because they could not find the witness who was going to testify to these facts. Now, a complete and thorough review of the record shows. Would you clarify that, counsel? The court was not aware of the evidence pertaining to the witness who had not yet been found. That's what you said, right? Right. And I agree with that. Was the court aware of what the state's evidence was going to be? Because it seems to me that the court would at least have had to have had some kind of outline of what the state's evidence was going to be before you can make the decision whether the evidence that's going to come from the unfound person is even going to be admissible. So what did the court know when it entertained this motion? Yeah, you are correct, Your Honor. If you look at the record and the motion to admit, the prosecutor attached a police report that indicated essentially an outline of the allegation. It's really unclear as to who is giving the police officer that information. It's just the information that Gavin Masters used to work for UPS, and there was this incident, and he attempted to steal a handgun from a package, and he was caught, and the handgun ended up being packed up and resealed in the box, and Gavin Masters was fired. And there was a witness listed as a supervisor in the police report, Brandon Head, and Brandon Head was the state's witness. But at the point that they were arguing this motion to admit a couple of months before trial, the state had yet to serve him with any sort of subpoena. They didn't know where he was. Right. I'm talking about the evidence on the day of the shooting. Oh. What did the court know about that? If anything, and if nothing, if the court wasn't aware of it, at least in outline form, I don't know how the court could have made a decision on whether to let the state present the evidence, whether it was for intent or identity. Right. I understand, Your Honor. I think what you're saying is that there are two parts. There's what is at issue in the trial on the crime charged, and then there's the uncharged crime. And the court needs to know both what is the evidence on the uncharged and what is the evidence going to show at trial. You articulated it better than I did. But did the court know both? That's my question. As far as the order of the witnesses, Your Honor, I cannot recall exactly where Brandon Head showed up in the trial as far as order of witnesses. But I will say this, Your Honor. The court made its ruling, as it appears, two months before trial. And that's what I was saying. A complete and thorough review of the record shows that there was never a hearing as to the evidence. So Brandon Head is found literally the day before the trial. And there's a police report generated where he's interviewed the night before. And then the morning of the trial, that police report is handed to defense counsel. And then defense counsel has to figure it out from there. I think what Judge Turner is asking is that the time that he heard the motion, he had to know where the gun came from. For example, let us suppose the evidence is, or is going to be, that the defendant grabbed the gun from another person that was in the room. And I understand about taking it out of somebody else's backpack. He grabbed the handgun that belonged to somebody else in the room and fired the shots that he's alleged to have fired. The trial judge would say, well, if that's your theory of the case, what does that mean? I mean, that was more of a spontaneous act in terms of stealing a gun 10 days before. That would factor into me as I would have tried to decide what's the connection. And I might have decided the way that you're arguing it. Who knows? But I would have had to have the context for why it was important that he was trying to acquire a gun or he stole a gun. And I agree with you, Your Honor. And I won't pretend to understand what exactly Judge Adrian did or did not know at the time he made his ruling. All I can go and all we can do is go from the record. And the record indicates that he knew nothing. I mean, there is no discussion or analysis of here's the crime charts, here's the evidence that the State intends to present, and here's what Brandon Head is going to testify to. Even after he's found, I would contend there should have been an evidentiary hearing outside the presence of the jury to determine what Brandon Head was going to testify to. And then the State would have had to present their argument to say, Your Honor, I know it was a failed attempt to steal the gun, and now we know that Brandon Head is saying that Gavin Master said he stole it because he was going to sell it to someone else. So he's not saying that he stole it because he needs protection. He's going to use it. Eleven days from now he's going to shoot two people. He's not saying any of that. He's saying it's a commodity. It's something that he can sell. Still, it's theft. It was wrong. But it in no way ties to this crime that occurred 11 days later. Well, you alluded to that for counsel because isn't the flip side of that simply the proposition that as someone who is considering or selling drugs, you need protection and you may at times have to be prepared to shoot someone, to kill someone, for your protection in engaging in that enterprise? I think that a jury could draw inferences and the State could argue all of those things. And that story and that backdrop is there without this other crime evidence of theft. The State in this case presented their theory and their story. Intent, motive, they were not at issue. This was a drug deal, according to the State, gone bad. Gavin Masters was the drug dealer. The two individuals in the case, the one that was killed and the other one, they stole the drugs or one of them did. And then the theory is that Gavin Masters shot them both. So there's no issue of intent. There's no issue of motive. In fact, the other crime evidence that was presented but never objected to, and I can only assume it wasn't objected to because the court would have ruled that it was legitimate other crime evidence, was the marijuana. So there was a drug sale, drug possession going on, and that was other crime evidence in this case. And I would argue defense counsel should have said, Your Honor, I object, this is other crime evidence. The court would have said, no, this goes to motive. This goes to even a continuing narrative, a description that gives context to what happens. However, we're going to say that since it gives context, since it shows motive, it's a legitimate purpose. And then there should be a limiting instruction that's given to say that the sale of marijuana is another crime, it's uncharged, and it goes towards motive or intent. And so the other crime evidence that was legitimately presented in this case, that is clearly waived because it was never argued, tells the story. The court didn't need the 11 days prior gun in order to show intent, nor did they need it to show identification, nor did it show identification or intent. The intent cases, Your Honor, I think there is going to be some discussion, I assume, that there will be with regard to the issue of whether or not intent is at issue in every single case and whether that is a bright line test. And, Your Honor, I would argue that the Fourth District has not adopted a bright line test. I know there's discussion regarding Johnson, Justice Steigman's position, and that case was very unique. It was more of a continuing narrative type case. And so I don't believe, Your Honor, that the Fourth District adopts a bright line test. I spend a lot of time in the brief on Clark, which I would call the Court's attention to, because the State argued in Clark the same thing that I believe the trial court did in Gavin's case, in that the State can introduce other crime evidence relevant to intent, even where the defendant does not contest the element of intent at trial. That is to say that in any case requiring proof of intent, intent is deemed to be at issue for the purpose of admitting other crime evidence. And the Clark Court goes through its analysis, talks about people versus heard, explaining the Illinois Supreme Court has never taken that position. And then I also talk about Johnson, where the bulk of the opinion focuses on a continuing narrative. That's a case where the defendant goes on a vigilante mission and commits a lot of other crimes and ultimately ends up busting into the apartment of two people that he mistakes their apartment. And in his alibi, he says, I wasn't, not only was I not there, but these are complete strangers, which they were. Why would I bust in their apartment and shoot them? Well, the fact is that you had to show the other crime evidence to show a continuing narrative to get to the point of why he was busting in on those innocent and strangers who had nothing to do with anything in the case. So, Your Honor, the issue of intent was never at issue in Gavin's trial. And so the court was wrong in finding that this evidence should go in under a theory that it proved intent. Let me ask you a question. This is an interesting issue. You win the issue. What's wrong with the testimony of the three witnesses? In other words, why isn't it harmless given that you have three people, one of whom the guy who got shot, who lived, saying this is the guy that did it? Right. Your Honor, that's a good question because it goes to the harmless error issue. So, there were nine people there who should be able to tell you who shot the gun. Two of those people, one ended up dead, the other one injured. The other seven, there was Elena Bohm. It was the Bohm house. She was the daughter of the owner of the house. She lived in the house. She removed items, including the marijuana, out of the house. She was not called by either side because the record shows that her lawyer had told both the prosecution and the defense attorney that she would invoke her Fifth Amendment right if she would be to testify. There was Kobe Tipton. He was one of Elena's friends. He did testify. He was in the room when the shooting occurred, but he did not know who shot Bowser Smith or Osborne. Elena had another friend, Chelsea Holman, in the house. She didn't testify. Elena had another friend, Autumn England. She was in the house. She didn't testify. Elena's friend, Alec Gilday, did testify, and that's one of the three, Your Honor, you're referring to. He's 15 years old. He lied to the police in his initial interview. Later, he tells the police that Gavin is the shooter, but he testified to key facts that he had left out in his initial interview, and he was crossed on that issue. The other witness that testified was Elena's friend, Colin Lindner. He's also 15 years old. He was interviewed by the police at least 10 times. He previously stated that he did not know who shot the gun, but later told an officer what he wanted to hear. That was the quote in the testimony after the officer threatened to charge him with murder, unlawful use of a weapon, felony sale of drugs, and felony possession. His testimony was not only inconsistent with his prior statements, but it was inconsistent throughout his testimony. He impeached himself between cross and direct examination. Then there's Gavin Masters. He's Elena's boyfriend, not friends with anyone else, and he's charged with the crime. And finally, there's Skyler Osborne. I'm sorry, you're out of time. Do you want him to finish his thought on that? What's wrong with Mr. Osborne? Mr. Osborne's testimony, he, at the crime scene, could not identify who shot him. At the hospital, could not identify who shot him. And one month later, after Gavin's arrest, after it had been publicized in the media, Osborne was interviewed again. Again, one month later, he had been visited by his mother, his sisters, and friends. And after those visits, he identified Gavin Masters as a shooter, and that's what he testified to. What about his statement? He said that there was an older male that tried to lend him assistance and who shot him. And he said it was that blond kid with glasses. Right. And Gavin Masters was not a blond kid. Did he have glasses? Or do we know? I mean, at the time. Yeah, I don't recall if he had glasses at the time. Thank you. Thank you, counsel. You'll have more time on rebuttal if you so desire. Ms. Legler? Good afternoon, Your Honor and counsel. My name is Erin Wilson-Legler, and I appear on behalf of the state. This court should affirm defendant's convictions for two reasons. First, the trial court did not abuse its discretion by allowing Brandon Head to testify about the other crime's evidence in this case. And second, even if the admission of Brandon Head's testimony was an abuse of discretion, it did not amount to reversible error. To my first point, Your Honors, in People v. Peterson, the Supreme Court, the Illinois Supreme Court, held that the proper standard for reviewing the admission of other crime's evidence is the abuse of discretion standard of review, which, as Your Honors are well aware, requires this court to uphold the trial court's decision so long as it is not arbitrary or unreasonable to the extent that no reasonable person could adopt the view of the trial court. Let's stop right there, then. What is reasonable about connecting these two, or what connection is it? Well, Your Honor... The other crime's evidence showed that, allegedly, that the defendant was a thief, and he was going to attempt to steal something because he wanted to sell it. What does that have to do with identity or intent or motive? Your Honor, it has to do with intent, motive, and it also somewhat provides a continuing narrative. But how about identity, which was the first thing that was offered by the state? This proves identity. I don't grasp that at all. The state has not taken that position in this appeal. You're not taking that position. Correct, Your Honor. Instead, the state argues that this evidence bears on defendant's intent. In People v. Johnson, this court did specifically state that intent is at issue in cases involving specific intent crimes. I'll agree to that, but what does it have to do with intent in this case, or motive? Sure, Your Honor. The evidence indicated that defendant had the desire to obtain a firearm in close temporal proximity to the shootings at Barr. Ten days? Yes, Your Honor. It was the state's theory at trial that the defendant armed himself with firearms during his drug transactions so that in the event that something went awry, as happened here, he was either able to protect himself or to retaliate. What was supportive of that theory, other than the other crimes evidence? Your Honor, there was testimony from Allie Gilday that defendant actually did obtain a firearm at some point, and he had it with him at the Boehm residence. I believe it was two days prior to the shootings here. Once you couple all the evidence together, the fact that there was marijuana sales going on at the time, and there were other witnesses who indicated that defendant was selling marijuana out of the Boehm residence, when you put all of that together, what you have is a person who is selling drugs out of a home, who arms himself with a firearm during these drug transactions, so that if something happened, as did here, he could potentially protect himself or retaliate. Assuming the jury believed that defendant was the person who did this, for the moment, we assume that. I don't understand what the 10 days earlier would have to do with that. They would buy the story that guys that engage in this kind of activity would very often arm themselves so that they can protect themselves and they're engaged in a dangerous trade. What difference does it make if they're also potentially a thief, or they would steal anything from the UPS truck that they thought they could sell? Would the defendant have to testify to that and say, yeah, I ripped other stuff off from the truck when I was loading. I saw that and I thought, this is a nice piece. I can sell this. I don't need anything like this to protect myself. I can buy some cheap Saturday night special to protect myself. I don't need this. Which, if I'm on the jury and I'm thinking, you know, the guy's got a gun and he uses it. He happened to obtain it from this other guy that he has carry around in his backpack. Why dirty him up with the 10 days earlier other crimes evidence? Because, Your Honor, it bears on his intent. It shows that he had this desire to have the firearm and to protect himself or to retaliate in the instance that something went wrong, which is exactly what happened in this case. Counsel, you're not arguing that the shooter in this case, whoever it was, that there's a question of whether the shooter had the specific intent to commit murder? Was that really an issue in this case? Your Honor, intent? The question was who was the shooter? The identity? Really? I mean, isn't that right? Not necessarily, Your Honor. In any case involving... So you're saying there's an argument that whoever the shooter was, that pumps three bullets in the person who tried to steal the dope and run away and then turns and pumps another bullet into the shoulder chest area of the second victim, that there was a question of whether that was the specific intent for the crime of murder? Your Honor, certainly the fact finder could draw the intent to kill from the act itself. However, it is still the state's burden to prove specific intent to kill in cases involving first-degree murder and attempted first-degree murder. And under these facts, you needed evidence from 11 days before that the UPS guy being the defendant had opened a package as if to steal a gun wherever the UPS loading place was. You needed that to show the specific intent of the shooter in this case. Respectfully, Your Honor, the evidence merely had to be relevant to the defendant's intent. It did not necessarily have to be necessary. I don't see any relevance. I don't see intent. I can see identity, except there's no link up. It's 11 days beforehand. And apparently, from what I've understood so far, maybe you can explain it better to me, the trial judge was making a decision here without any knowledge of what the state's case-in-chief was going to be. Is that right? No, Your Honor. That is not the state's position in this case. The trial court addressed the admissibility of Brandon Head's testimony on three separate occasions prior to trial. At the first instance, both the state and defendant presented argument with respect to whether the evidence was admissible to the issue of identity. But it was the trial court itself that kind of shifted the analysis into the intent aspect. However, the trial court preliminarily ruled that the evidence may be admissible to prove intent in this case, but it ultimately reserved its ruling until such time that Brandon Head could be identified and subpoenaed. And then prior to trial, once the state had served Brandon Head, the trial court took up the issue again in chambers prior to the selection of the jury. And there is when the trial court, who had the witness statement from Brandon Head, that is when the trial court made its ultimate decision. And so the trial court did not make its final decision at the pre-trial hearing two months before trial. Instead, it looked at what it had before it and it told the parties that it was leaning towards admitting this evidence as probative of intent and then ultimately reserved ruling until later, until the time that Brandon Head was actually served and ready to testify at trial. And so the trial court, excuse me, did wait until it had the information necessary to make this determination, which... And what information was necessary? That's my question, for the trial court to make the determination. Well... Just what Head was going to say? That's all the trial court needed to know? What Head was going to say and then just the general theories of the, I mean, the state had made it clear that its theory was that the defendant had the intent to keep himself armed during these drug transactions and that this incident was a drug deal gone wrong. And it was its theory that this prior act demonstrated defendant's intent and motive to, that explained why Skylar Osborne and why Randy Bowser Smith were shot in this case. Well, this might be an easier question for you. Assume I don't agree with that. What's your argument with regard to why it would be harmless error anyway? Well, the state actually submits that this case was, or this issue was forfeited on appeal. Okay. Plain error or harmless error, whichever you prefer to argue. Sure, Your Honor. Plain error did not occur because defendant could not persuade that either first prong or second prong plain error occurred in this case. As the second district noted in People v. Strawbridge, an error that can be deemed harmless cannot at the same time be so presumptively prejudicial as to constitute a structural error. And as we are aware, the erroneous admission of other crimes evidence may be deemed harmless. So it is illogical for it to also be at the same time so presumptively prejudicial as to constitute second prong plain error. Additionally, the evidence in this case was not closely balanced. Surveillance footage as well as witness testimony indicated that defendant placed an item into his waistband immediately before following Randy Bowser Smith and Skylar Osborne into the Boehm residence. Minutes later, the two men were shot, and the footage shows defendant running from the home at the front door. The evidence also indicated that defendant pulled a firearm out of his waistband right before shooting Bowser Smith and Osborne. And three separate individuals, including one of the victims, identified defendant as the shooter. And while it is true that some of the witnesses gave inconsistent statements and testimony at the investigation and the proceedings below, there was additional reliable evidence such as the surveillance footage as well as another witness's testimony who observed these actions from the street that corroborated these stories. And for these reasons, the evidence was not closely balanced because the quantum of evidence weighed in favor of the state. And the harmless error analysis, while it is separate, is you reach the similar result because you have corroborated evidence showing that defendant was the individual who shot these two men and that he shot these men after pulling a firearm out of his waistband. You also have surveillance footage showing him placing something into his waistband. But we don't know that it was a gun from the surveillance camera. Correct. You can't tell from the surveillance footage. But what you see is defendant reaching into the backpack and placing something into his waistband. And then you have witness testimony indicating that once inside, defendant pulled the firearm out of his waistband and then shot the two men after Randy Bowser Smith attempted to steal the marijuana. And so for these reasons, the state would request that this court affirm the defendant's convictions for first-degree murder and attempted first-degree murder. And if there are no further questions, the state will rest on the remaining arguments in this brief. I don't see anything. Thank you, Your Honors. Mr. Loveless, any rebuttal argument? Your Honor, I think based upon the questions to the state, the Johnson is a good case to focus on because I think it demonstrates a proper analysis of these issues of other crime evidence. And the reason I say that, and Your Honor, you'd ask, well, what did the court know? In the Johnson case, the other crime evidence didn't come up until rebuttal, as I understand it. So the court did know exactly what the case in chief was. The state did not use the other crime evidence in their case in chief. It was only after the defendant in that case put all of the issues of identity and intent and emotive saying, I wasn't there, I don't know these people, why would I ever shoot these strangers, that then the court was able to connect things and use continuing narrative and intent and emotive and identification, all those separate things that Justice Steigman then writes about in his opinion. So I think that that case is a demonstration of a trial court doing the right thing in analyzing and creating a record. That just didn't occur in this case. I wish there was more record to show what the trial court knew at the time. Although this issue was taken up three times, the only time it was taken up as to the admissibility was the first time in September, two months before the trial. If you look at the record as to what the discussions were the day before and the morning of the trial, there wasn't any discussion of what the witness would say. They had found the witness. Doesn't that give you a forfeiture problem? There was no objection when this witness was called to testify, right? There was an objection. There was a motion to admit, and the judge ruled on the motion to admit in September. And the judge stayed with that ruling. And then defense counsel, although he did not object during the trial, the court had already ruled on that motion. It would have been improper for him to object in front of the jury. Isn't this really like a motion in limine that the court could reconsider, given the fact motions in limine are not final, before, I mean depending upon the order of witnesses, the court could have said, wait a minute, I don't think I want to let this in. Well, and I think the comment was made that the court knew what was in the police report based upon the new interview with Brandon Head when he was interviewed. The fact is the record does not indicate there was any sharing of that information with the court, at least on the record. So I am not sure, maybe there was something off the record, but clearly the record does not indicate that the court took back up the issue of whether or not it was going to admit that evidence during the trial. There was discussion on whether or not it was the defendant wanted a continuance and things of that nature. On the issue of forfeiture, Your Honor, the Densing case lays out the requirements and I believe that the defense counsel, although I wish would have argued more adamantly about this issue, clearly met the requirements to preserve this issue for appeal. So I don't believe it's a forfeiture issue. Your Honor, as far as any of the evidence in the case, the surveillance footage is extremely grainy. It really doesn't show much and there are all kinds of issues with the eyewitnesses who identified Gavin Masters as the shooter. And this whole theory that Colin Lindner was somehow the bag man and handed the gun, police reports and the testimony, he goes back and forth. And clearly he was under a threat of prosecution and testified with something that may have appeared in that surveillance footage. Again, may have appeared that he put something in his waistband. And then all of the other witnesses kind of come on board after the fact, review the surveillance footage and after the surveillance footage is viewed, oh yeah, I do remember seeing something placed in the waistband. So, Your Honor, this is an arbitrary ruling by the judge in this case. I agree that this is an issue that we have to overcome harmless error. But, Your Honor, it's here. There's a need to reverse this trial judge's decision and remand this back to the trial court for a trial without this other crime evidence. Thank you, counsel. This matter will be taken under advisement and will be in recess until the next case.